UNITED STATES BANKRUPTCY COURT
FOR THE NORTHEN DISTRICT OF GEORGIA
GAINSVILLE DIVISION

In re:

MICHAEL L. EZELL
PATRICA A. EZELL

Case Number: 08-21056-JRS
Chapter 13

Debtors,

_____/

MICHAEL L. EZELL,

Plaintiff,

vs.

Adv. Proc. No.

NAVIENT SOLUTIONS LLC, and NAVIENT CREDIT FINANCE CORP.,

Defendants.

_____/

## PLAINTIFF'S COMPLAINT

Plaintiff, MICHAEL L. EZELL ("Plaintiff"), by and through the undersigned counsel, files this Complaint against Defendants NAVIENT SOLUTIONS LLC, and NAVIENT CREDIT FINANCE CORPORTION, collectively ("Navient"), on personal knowledge as to those matters within his capacity, and information and belief as to all other matters, as follows:

### I. PRELIMINARY STATEMENT

1. This action is brought by Michael L. Ezell to enforce his rights under bankruptcy law regarding a private student loan originated in 2006 for which the Defendants claim ownership or rights as servicer ("the Loan").

1

2. The Plaintiff was not a student but made the Loan relating to his daughter's attendance at Florida State University during the academic year of 2005-2006. Plaintiff then filed for Chapter 13 protection in April of 2008 and listed the Loan in his schedule F, identifying and notifying Sallie Mae as the then-owner/holder of the Loan. On June 11, 2013, the Court issued an order discharging the debts listed on Plaintiff's schedules. Defendants Navient who succeeded Sallie Mae, by and through themselves, their predecessors in interest, and their agents received notice of the Discharge Order.

3. The Loan was discharged because it was excepted from Bankruptcy Code Section 523(a)(8)(A)(i) and (ii). Yet, Navient did not treat it as having been discharged in bankruptcy but continued to collect on the Loan against the Plaintiff as well as his daughter, Nicole Ezell.

## II. PARTIES

4. Michael L. Ezell is an individual and resident of Cumming, Georgia who filed for bankruptcy relief in this Court in April of 2008. The Court issued a discharge order on June 11, 2013.

5. Defendants NAVIENT SOLUTIONS LLC and NAVIENT CREDIT FINANCE CORPORATION are related business entities under the corporate umbrella of "NAVIENT" which, directly or on behalf of other lenders, engage in commercial activities in this District, including originating, servicing and collecting of consumer debts. The Navient defendant-entities are headquartered in Wilkes-Barre, Pennsylvania and can be served through its registered agent.

6. Nicole Ezell is a non-party whose education information was used in connection with the origination and funding of the Loan in 2006.

### III. JURISDICTION AND VENUE

7. This Adversary Proceeding is brought under Bankruptcy Case Number 08-21056.

8. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding and involve questions of federal law.

9. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601, 15 U.S.C. § 1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

10. Venue is proper in the Northern District of Georgia, Gainesville Division pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

### IV. BACKGROUND

11. 11 U.S.C.S. § 523(a)(8) outlines separate categories of student debt that may be excluded from discharge: (A)(1) applies to loans in which a governmental unit or a nonprofit institution had a defined role; (B) requires an analysis using multiple statutes including the Internal Revenue Code which defines a "qualified education loan" as among other things, "any indebtedness incurred by the tax payer solely to pay qualified higher education expenses" along with other conditions. The "qualified higher education expenses" are the "cost of attendance" at the eligible education institution. An "eligible education institution is one "which is eligible to participate in a program under Title IV" of the Higher Education Act. In this case, the Loan, the Plaintiff would argue, is discharged because (1) it was not an "educational benefit", "scholarship" or "stipend" as those terms being referred to under 11 U.S.C §523(a)(8); (2) it was not made,

insured, or guaranteed by a governmental unit, nor was made under any program funded in whole or in part by a governmental unit or non-profit organization, and (3) it was not a qualified education loan as it was originated in excess of the cost of attendance for the institution attended by his daughter.

12. The legislature, in enacting §523(a)(8) did not intend to extensively expand nondischargeability to private educational loans. Section 523(a)(8)(23) provides only limited protection from discharge of bankruptcy. Said limited protection applies to private student loans to the extent that the money loaned supplemented and mirrored federal student lending: money loaned to eligible students at Title IV accredited schools for tuition, room, board and books ("Qualified Education Loan"). Qualified Education Loans are defined as debts incurred by eligible students, at eligible institutions, for eligible education expenses. Additionally, to be a qualified education loan, the debtor must have been a tax payer in the year the loan was originated, and the loan must have been originated within a "reasonable time" before and after the expenses became due to the educational institution. The Internal Revenue Code, 26 U.S.C.§221(d)(1), defines education loan as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses."

13. Education loans are different from other types of consumer debts because they are made without consideration of a for-profit business including credit check or co-signer, and offered at a low interest rate to further the public good, which is to protect the solvency of government education loan programs for future students. On the other hand, lenders have been making direct-to-consumer ("DTC") loans to students at eligible schools for more than the "cost of attendance" presumably for purposes other than to obtain an education. These DTC loans are simply another

4

form of unsecured consumer debt and are discharged automatically upon entry of a discharge injunction.

14. "Cost of Attendance" is a term found in section 472 of the Higher Education Act at 20 U.S.C.§1087ll, which relates to qualified higher education expenses. Cost of Attendance is determined by the eligible Title IV institution to include tuition, fees, room and board, books, and living expenses, reported to the Department of Education, published both on the school's website and on the Integrated Postsecondary Education Data System's website. To be exempt from discharge pursuant to §523(a)(8)(B) as a Qualified Education Loan, a loan must be both (i) an educational loan, and (ii) made for the expenses covered by the Cost of Attendance at a Title IV school.

15. Navient was and is fully aware that loans such as the subject loans were potentially dischargeable. For more than a decade, major lenders like Navient and underwriters have included in student loan asset-backed securities' prospectuses ("SLABS") language warning investors that, pursuant to §523(a)(8), only private loans made for qualified education expenses are excepted from discharge. [1] For example, the Securitization Prospectus includes the following:

> **Risk of Bankruptcy Discharge of Private Credit Student Loan**: Currently private education loans *made for qualified education expenses* are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the borrower's cost of attendance. This process does not involve school enrollment verification as an additional criteria and, therefore, may be subject to some additional risk that *the loans were not used for qualified education expenses*

---

[1] See, e.g., SLM Student Loan Trust 2007-8 Prospectus Supplement to Base Prospectus dated October 16, 2007, at 33 (https://www.navient.com/assets/about/investors/debtasset/SLM-Loan-Trust/06-10/20007-8/20078.pdf) ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including in their certification of the cost of attendance for their education. This process does not involve school certification as additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified education expenses. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan …") (emphasis added); see also SLM Loan Trust 2008-1 Prospectus

5

> *and thus could become dischargeable in a bankruptcy proceeding.* If you own any notes in a related issuing entity, you will bear any *risk of loss resulting from the discharge of any borrower of a private education loan . . . .*

See Navient Loan Trust 2015-1 Prospectus Supplement dated February 12, 2015, at 26 (https://www.navient.com/assets/Final-Prospectus-2015-1.pdf) (emphasis added).

16. Navient, therefore, recognized the risk of the discharge in bankruptcy of Consumer Education Loans that are not used for Qualified Education Expenses, such as the Subject Loan, and assumed that risk in lending it to the Plaintiff.

### V. PLAINTIFF'S FACTUAL AND PROCEDURAL HISTORY

**A. The Loan was discharged because it was not a Qualified Education Loan; it was originated in excess of the Cost of Attendance of the academic year of 2005-2006**

17. Plaintiff's daughter, Nicole Ezell, attended Florida State University between 2002 and 2006. In each of these years, Nicole's tuition was paid for fully with her scholarships, and her living expenses were paid with other sources of funds. In the academic year of 2005-2006 which was her last year of college, Nicole was married and living with her husband. She filed her own income tax return and was no longer a dependent of the Plaintiff.

18. For Nicole's final year in college, the Cost of Attendance published by the school was only $14,088, consisting of $3,208 in tuition, $856 in books, off-campus living expenses of $7,774 and $2,250 in other expenses. In that year, Nicole was eligible for and received a scholarship under the Bright Futures program that paid her tuition fully (Exhibit A). Although Nicole borrowed approximately $5,000 in a private student loan in the same year, she had paid it off in full.

19. The Plaintiff, as Nicole Ezell's father, was not a student but obtained the subject Loan from the private Tuition Answer Loan Program. It was Plaintiff's intention to use the Loan

6

to pay down his own debts and to keep things afloat during the financial crisis. The Loan was made by the Lender directly to the Plaintiff and not through the financial aid office of Nicole's school. Plaintiff did use the Loan's proceeds to pay down his own debts and to keep things afloat during the financial crisis of 2006-2008. Nicole Ezell did not make the loan application. While she believes that her college education information was used in connection with Plaintiff's obtaining the Loan, she disputes that she had any intention to be a co-signer of the Loan.

20. The Tuition Answer Loan Program makes private loans made based on the borrower's credit score and/or one or more co-signers. These private loans do not represent the flexible repayment terms or borrower protections that federal student loans provide. Rather they carry variable high interest rates, loan limits, terms and conditions that are determined by the lender.

21. The Loan, the ownership of which is claimed by Defendant Navient Credit Finance Corporation, carries variable interest rates as high as 14.250%. The Loan was made in 2005 with a repayment date of November 12, 2006, in the amount of $44,444.00. The Loan's current balance is $86,127.16 even though Plaintiff made substantial payments before and after the bankruptcy discharge.

22. Even assuming that the Loan was made for Nicole Ezell's education, Florida State University's published Cost of Attendance in the academic year of 2005-2006 was only $14,088. Yet the Loan was originated for $44,400, more than three times Florida State University's Cost of Attendance.

23. The Loan as borrowed by the Plaintiff is not a qualified higher education loan. It lacks the traditional characteristics of education loans because it was made under the Tuition Answer Loan Program—an admittedly direct-to-consumer loan program and not through the

7

financial aid office of Nicole Ezell's. The Loan was assigned an adjustable interest rate at the time of origination, the same as any commercial loan.

24. Navient, who has actual knowledge of the bankruptcy discharge, has the burden of establishing the discharge status of a debt after the discharge is entered yet it never filed an adversary proceeding to contest the dischargeability of the Loan. Rather, Navient fraudulently informed the Plaintiff and Nicole Ezell that the Loan was not discharged, demanded and accepted payment from the Plaintiff. Moreover, the Defendants sought to collect on the allegedly discharged Loan by use of dunning letters, emails, text messages and telephone calls. These debt collection efforts were made knowingly and willfully in violation of the Court's discharge injunction.

25. Even though Plaintiff did not enter into an agreement with Navient with respect to the dischargeability of the Loan under section 524(c) of the Bankruptcy Code, Navient, by and through the affiliated companies, their predecessors in interest, and their agents, nevertheless resumed collection efforts after the discharge was entered, and fraudulent represented to the Plaintiff and his daughter that the Loan was not discharged and demanded payment and accepted payment. All in all, Plaintiff paid Navient $32,917.58 toward the Loan *after* discharge. He did not make these payments voluntarily but under constant compulsion and demand of Navient.

**B. The Loan was discharged because it was not made by the Plaintiff for the education of a dependent as required under 26 U.S.C. §221(d)(1)(A)**

26. The Internal Revenue Code, 26 U.S.C. § 221(d)(1), defines "qualified education loan" to mean any indebtedness incurred by a taxpayer solely to pay qualified higher education expenses: (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred, (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and (C) which are

8

attributable to education furnished during a period during which the recipient was an eligible student. Stated differently, this definition requires (1) a tax payer to incur a debt; (2) the tax payer or his spouse or dependent to incur "qualified higher education expenses"; (3) the debt to be incurred solely to pay for those qualified education expenses; (4) the qualified higher education expenses to be paid or incurred in close temporal proximity to the incursion of the debt, and (5) the qualified higher education expenses to be attributable to education furnished while the recipient was an eligible student.

27. In this case, Navient knew or should have known that Plaintiff did not incur the indebtedness to pay his own qualified higher education expenses. Rather, Plaintiff incurred the debt on behalf of his daughter, Nicole Ezell. Regardless of Nicole's status as an eligible student attending an eligible institution, in 2005, when the Loan was incurred by the Plaintiff, Nicole was no longer a dependent of her father, but living independently and filing her own tax return. Thus, the Loan was not a qualified education loan as to Plaintiff.

### VI. CAUSES OF ACTION
### COUNT ONE - DECLARATORY JUDGMENT

28. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

29. Plaintiff requests the Court to grant declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the Loan incurred by him was discharged by operation of law on June 11, 2013, because it was not an education loan protected by the provisions of section 523(a)(8). Plaintiff was properly granted a discharge. The Loan was listed on his bankruptcy schedule and Navient was properly notified. The scope of discharge applied to the Loan, and Navient, instead of treating the Loan as discharge, or seeking judicial

determination of its dischargeability, resumed collection effort after the discharge was entered. Therefore, Navient intentionally violated the discharge injunction.

30. Plaintiff prays the Court to issue injunctive relief barring the Defendants from the continuation of debt collection and demand for payments from him and his daughter, Nicole Ezell.

**COUNT TWO – VIOLATIONS OF THE DISCHARGE ORDER**

31. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

32. The Loan was discharged pursuant to the statutory injunction effectuated by the Discharge Order because it was an unsecured consumer loan, made based on the consumer's credit, and bearing high variable interest rates, rather than non-dischargeable debts contemplated by §523(a)(8).

33. Navient was notified of the statutory injunction afforded the Plaintiff by the United States Bankruptcy Court for the Northern District of Georgia pursuant to Federal Rule of Bankruptcy Procedure 4004(g). The Defendants as the creditor (1) knew the discharge injunction was applicable, and (2) intended the actions of demanding payments and accepting payments from the Plaintiff which violated the injunction. 11 U.S.C.S. § 524(a).

34. Despite actual notice of the statutory injunction through its predecessor in interest, Sallie Mae, Navient has nonetheless taken actions to collect on the Loan directly or indirectly by use of dunning letters, emails, text messages, and telephone calls demanding payments, in direct violation of the Discharge Order. In so doing, Navient was able to extract payments from the Plaintiff in the amount of $32,917.58, on a debt that was discharged.

35. Plaintiff prays the Court to cite Navient for civil contempt and order Navient to pay an amount to be determined at trial for their willful violation of the statutory injunction pursuant to 11 U.S.C. §105.

### COUNT THREE – RECOVERY OF MONIES PAID UNDER A DISCHARGED DEBT

36. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

37. Since a bankruptcy court is authorized to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code under 11 U.S.C. §105(a), the Plaintiff prays the Court to order the Defendants to return the payments he had made under duress. Awardable compensatory damages to a bankruptcy debtor include any payments obtained by a creditor in violation of the discharge injunction, together with interest thereon.

### COUNT FOUR-AWARD OF ATTORNEY FEES AND COSTS

38. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

39. 11 U.S.C. §524 allows a prevailing bankruptcy debtor in an action to enforce the discharge injunction reasonable attorney's fees. Enforcement of the discharge injunction is in the nature of an award for civil contempt, and such awards typically consists of both compensation for any actual damages sustained, plus the reasonable expenses incurred in presenting the contempt to

the court. Courts have found that attorney fees can be awarded for violation of the discharge injunction, even if the debtor suffered no other actual damages.[2]

40.   Plaintiff prays the Court to award him all expenses reasonably and necessarily incurred in his attempt to enforce compliance of the discharge injunction, including attorney's fees and costs.

## VII. JURY DEMAND

Pursuant to his rights under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Michael L. Ezell hereby requests a trial by jury on all triable issues.

## VIII. PRAYER

In light of the foregoing, Plaintiff requests that Navient be cited to appear and judgment be entered against Navient for:

**(1)**   declaratory and injunctive relief;

**(2)**   actual, statutory and exemplary damages;

**(3)**   attorneys' fees and costs to the fullest extent permitted under the law;

**(4)**   other such relief as the Court deems just and proper.

Dated: September 28, 2021.

Respectfully submitted,

**Local Counsel for Plaintiff:**

\_\_\_/s_____
Howard P. Slomka, Esq.
GA Bar 652875

---

[2] *In re Miller*, 447 B.R. 425 (E.D. Pa., Mar. 1, 2011); *In re Van Winkle*, 598 B.R. 297 (Dist. N.M, Feb. 22, 2019).

        6400 Powers Ferry Road, NW Suite 391
        Atlanta, GA 30339
        (770) 856-5793
        Howie@Slomka.us


        /s/ *Ha Thu Dao*, Esq
        Christie D. Arkovich, Esq.
        Florida Bar No. 963690
        Barbara C. Leon, Esq.
        Florida Bar No. 582115
        Ha Thu Dao, Esq.
        Florida Bar 487597
        Primary E-mail: ha@christiearkovich.com
        Service E-mail: cdalaw@christiearkovich.com
        CHRISTIE D. ARKOVICH, P.A.
        1520 W. Cleveland St.
        Tampa, Florida 33606
        (813) 258-2808
        (813) 258-5911 (Facsimile)
        **ATTORNEYS FOR PLAINTIFF**
            ***Pro Hac Vice***